IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUANITA SANTIAGO and TIA MANSON, on behalf of themselves and all other similarly situated persons, known and unknown, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 10 C 6475 |
| v. | ) ) | Judge Guzman |
| SMITH THOMAS WILLIAMS HEALTHCARE, LLC and DEBBIE SMITH THOMAS, individually, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

Plaintiffs Juanita Santiago and Tia Manson, through their counsel, move for an Order enforcing the Settlement Agreement in this case and directing Defendants to pay the overdue settlement money owed to Plaintiffs and for an award of attorneys' fees and costs. In support of this motion, Plaintiffs state as follows:

1.     This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. §201, *et. seq.* (FLSA or the "Act"), and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et. seq.* (IMWL), for Defendants' failure to pay Plaintiffs and other similarly situated persons, their earned overtime pay. Plaintiffs and other similarly situated persons worked in excess of forty (40) hours per week but were not paid overtime wages at the rate of one and a half times their regular rate of pay for such time worked.

2.     On or about April 21, 2011, Plaintiffs executed a copy of the parties' settlement agreement. With respect to payment of the settlement proceeds, the agreement provided that:

1

    (i)    On or before April 30, 2011, Employer shall pay the gross sum of One Thousand Nine Hundred Eight Dollars and Eight Cents ($1,908.08), to be apportioned and paid as follows:

        **Payment To Juanita Santiago:** (a) a check payable to Juanita Santiago in the amount of Five Hundred Forty and 45/100 Dollars ($540.45), less applicable payroll taxes, and (b) a check payable to Juanita Santiago in the lump-sum amount of Five Hundred Forty and 45/100 Dollars ($540.45). A Form W-2 shall be issued to Employee for the payment described in subpart (a) and a Form 1099 shall be issued to Employee for the payment described in subpart (b).

        **Payment To Tia Manson:** A check payable to Tia Manson in the lump-sum amount of Eight Hundred Twenty-Seven and 18/100 Dollars ($827.18). A Form 1099 shall be issued to Tia Manson for this payment.

    (ii)    On or before May 30, 2011, Employer shall pay to the gross sum of Four Thousand Dollars and no Cents ($4,000.00), to be apportioned and paid as follows:

        **Payment to Werman Law Office, P.C:** A lump-sum check payable to Werman Law Office, P.C. (EIN #20-3042887) in the gross amount of Four Thousand and 00/100 Dollars ($4,000.00). A Form 1099 shall be issued to Werman Law Office, P.C. for this payment.

A copy of the settlement agreement is attached hereto as Exhibit A.

    3.    The Settlement also provides for an award of attorneys' fees in the event of a breach. Exhibit A, paragraph 1D.

    4.    Pursuant to the terms of the settlement, the first installments of the settlement proceeds were due on April 30, 2011. Defendant failed to make payment under the terms of the Agreement.

    5.    On May 2, 2011, Plaintiffs' counsel contacted Defendants' counsel and provided Defendants notice of their breach of the Agreement. Despite that notice of default, and conversation's with Defense counsel, as of today's date, Defendants have failed to cure their breach.

2

6.     Plaintiffs respectfully requests that the Court enter an Order directing Defendants to comply with the settlement agreement and directing Defendants to immediately pay Plaintiffs the settlement proceeds owed to them.  As per the Settlement Agreement, Ex. A, paragraph 1D, Plaintiffs request that all unpaid settlement proceeds by accelerated in full.

7.     Plaintiffs also request an award of reasonable attorneys' fees.  Plaintiffs' counsel's last hourly award for attorneys' fees is $550.00 per hour.  On February 17, 2011, Judge St. Eve awarded me the hourly rate of $550.00 per hour in the case of *Shaukat, et al. vs. Wireless 4 U, Inc., et al.,* Case No. 06 C 4214. Dkt. # 272.  On October 13, 2010, Judge Dow awareded me the hourly rate of $525.00 per hour in the case of *Palmore, et al. vs. C.A.P.I. Telecommunications, Inc., et al.,* Case No. 09 C 1659. Dkt. # 67.

WHEREFORE, Plaintiffs request that the Court enter an Order (i) directing Defendants to comply with the settlement agreement, (ii) directing Defendants to pay Plaintiffs the overdue settlement money owed to them under the settlement agreement's terms, (iii) and awarding attorneys' fees and costs in the amount of $1,100 (2 hours @$550.00 per hour).

Respectfully submitted,

Dated: May 16, 2011

s/Douglas M. Werman
Douglas M. Werman
Maureen A. Bantz
David E. Stevens
Werman Law Office, P.C.
77 W. Washington, Suite 1402
Chicago, IL 60602
312-419-1008

Attorney for Plaintiffs

3

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

Juanita Santiago and Tia Manson ("Employees") and Smith Thomas Williams Healthcare, LLC and Debbie Thomas Smith, (collectively "the Company" or "Employer"), voluntarily agree to completely settle and resolve all claims Employees may have against the Company as of the time Employees execute this Settlement Agreement and Mutual General Release (herein "Agreement"), in accordance with the terms of this Agreement, including, but not limited to, all issues related to or arising out of Employees' employment with Employer as follows:

WHEREAS, Employees filed a complaint against the Employer, Case No 10 C 6475, in the United States District Court for the Northern District of Illinois Eastern Division, alleging violations of the Fair Labor Standards Act and Illinois Minimum Wage Law (the "Lawsuit");

WHEREAS, Employees and Employer (the "Parties") want to avoid further controversy, litigation, costs, legal fees and inconvenience and enter into this Agreement to resolve all claims, including attorneys' fees, against Employer asserted by all Employees in the Lawsuit; and

NOW, THEREFORE, for and in consideration of the provisions, covenants and mutual promises contained herein, the Parties hereby agree as follows:

1. <u>Payment Terms.</u>

The Company shall pay Employees the gross amount of Five Thousand Nine Hundred Eight Dollars and Eight Cents ($5,908.08). The payments shall be apportioned and paid as follows:

(i) On or before April 30, 2011, Employer shall pay the gross sum of One Thousand Nine Hundred Eight Dollars and Eight Cents ($1,908.08), to be apportioned and paid as follows:

**Payment To Juanita Santiago:** (a) a check payable to Juanita Santiago in the amount of Five Hundred Forty and 45/100 Dollars ($540.45), less applicable payroll taxes, and (b) a check payable to Juanita Santiago in the lump-sum amount of Five Hundred Forty and 45/100 Dollars ($540.45). A Form W-2 shall be issued to Employee for the payment described in subpart (a) and a Form 1099 shall be issued to Employee for the payment described in subpart (b).

**Payment To Tia Manson:** A check payable to Tia Manson in the lump-sum amount of Eight Hundred Twenty-Seven and 18/100 Dollars ($827.18). A Form 1099 shall be issued to Tia Manson for this payment.

(ii) On or before May 30, 2011, Employer shall pay to the gross sum of Four Thousand Dollars and no Cents ($4,000.00), to be apportioned and paid as follows:

**Payment to Werman Law Office, P.C:** A lump-sum check payable to Werman Law Office, P.C. (EIN #20-3042887) in the gross amount of Four Thousand and 00/100 Dollars ($4,000.00). A Form 1099 shall be issued to Werman Law Office, P.C. for this payment.

B.     Employees agree that they alone are responsible for payment of any federal, state and/or local taxes or other assessments regarding all of the foregoing payments.

C.     Employer shall deliver the payments set forth in Section 1, above, to Werman Law Office, c/o Douglas Werman, 77 West Washington Street, Suite 1402, Chicago, Illinois 60602.

D.     The parties have specifically negotiated payment of the Settlement Payment over a period of time. In the event that there is any default of the obligation to make the Settlement Payment, Employees may sue for the balance of the Settlement Payment, with the balance of any unpaid settlement proceeds being accelerated in full. Employer agrees to pay Employees' reasonable attorneys' fees and costs in recovering any such unpaid amounts. Prior to bringing such suit, Employees must first afford a reasonable opportunity to cure the default through the following procedures. If Employees believe a default has occurred through non-payment of any individual payment of the Settlement Payment, Employees must give written notice via facsimile at (312) 629-9301 to Sean F. Darke, Wessels Sherman Joerg Liszka Laverty Seneczko, P.C., 33 West Monroe Street, Suite 1120, Chicago, IL 60603. Employer shall have seven (7) days from the date of the receipt of such notice to cure the default by making payment in accordance with the terms of this Settlement Agreement.

E.     Employees and Employer agree that the gross sum constitutes good, valid and sufficient consideration for this Agreement and Employees agree that, upon receipt of this payment, they have been properly paid for all hours worked, including overtime compensation, for all hours worked in excess of 40 per week, and any liquidated damages stemming from any overtime claims, as well as any other penalties or interest pursuant to Illinois wage and hour laws. Employees acknowledge and agree that the consideration described above is consideration to which they would not otherwise be entitled and are being paid in exchange for signing and not revoking this Agreement.

2.     <u>Release.</u>

A.  To the greatest extent permitted by law, each party agrees to release the other regarding all claims they have or might have as of the time of execution of this Agreement, whether known or unknown.  By way of explanation, but not limiting its completeness, the Parties hereby fully, finally and unconditionally release, compromise, waive and forever discharge each other from and for any and all claims, liabilities, suits, discrimination or other charges, personal injuries, demands, debts, liens, damages, costs, grievances, injuries, actions or rights of action of any nature whatsoever, known or unknown, liquidated or unliquidated, absolute or contingent, in law or in equity, which were or could have been filed with any federal, state, local or private court, agency, arbitrator or any other entity, based directly or indirectly upon Employees' employment with the Company, and any alleged act or omission to act by the Released Parties, whether related or unrelated to their employment, accruing prior to the execution, by Employee, of this Agreement. Each party otherwise further waives any right to any form of recovery, compensation or other remedy in any action brought by them or on their behalf.

B.     Without limiting the foregoing terms, this Agreement specifically includes all claims of Employees under the Fair Labor Standards Act of 1938, the Illinois Minimum Wage Law, and the Illinois Wage Payment and Collection Act. The release also includes any tort, and any

2

and all claims the Parties may have against each other arising from any federal, state or local constitution, statute, regulation, rule, ordinance, order, public policy, contract or common law.

C.     This Agreement includes and extinguishes all claims the Parties may have for equitable and legal relief, attorneys' fees and costs against each other. The Parties specifically intend and agree that this Agreement fully contemplates claims for attorney's fees and costs, and hereby waives, compromises, releases and discharges any such claims, except as otherwise recited herein.

D.     Employees agree that this release includes all claims and potential claims against the Company and any affiliated companies, including their parents, subsidiaries, divisions, partners, joint venturers, sister corporations, and as intended third-party beneficiaries, their predecessors, successors, heirs and assigns, and their past, present and future owners, directors, officers, members, agents, attorneys, employees, representatives, trustees, administrators, fiduciaries and insurers, jointly and severally, in their individual, fiduciary and corporate capacities (collectively referred to as the "Released Parties").

E.     The Parties promise and covenant that they will not file any lawsuit against each other based upon any claim covered under the foregoing release.

F.     Nothing in this release restricts the Parties' right to enforce this Agreement and the promises set forth herein.

3.     Stipulation of Dismissal

The parties shall execute and file a stipulation of dismissal with prejudice of this lawsuit within fourteen (14) days after the consideration is paid to Employees and their counsel in full as set forth in Paragraph 1, above.

4.     Nonassignment.

Employees expressly promise the Company that they has not assigned or transferred, or purported to assign or transfer, and will not assign or otherwise transfer: (a) any claims, or portions of claims, against the Released Parties (as defined in Paragraph 2(d)); (b) any rights that they may have had to assert claims on their behalf or on behalf of others against the Released Parties; and (c) any right they have or may have to the Settlement Payment. Employees promise that any monies, benefits or other consideration they receive from the Company are not subject to any liens, garnishments, mortgages or other charges, and no one else has any claim to any portion of the Settlement Payment.

5.     Confidentiality.

Employees agree that they will not disclose the terms of this Agreement to anyone except as may be necessary in response to lawful process of any judicial or adjudicative authority or otherwise allowed by law. Excepted from this paragraph are the Employees' attorneys, tax advisors and immediate family. If any non-party not excepted from this paragraph asks about the status of the claim, Employees will respond only that "the matter has been resolved" or "I do not want to talk about it."

3

6.      Neutral Construction.

The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties, regardless of who drafted the Agreement.

7.      Complete Agreement.

This Agreement sets forth all of the terms and conditions of the agreement between the Parties concerning the subject matter hereof and any prior oral communications, understandings, and all prior agreements are superseded by this Agreement. The Parties understand and agree that all of the terms and promises of this Agreement, other than the "Whereas" clauses which are informational, are contractual and not a mere recital.

8.      Amendment.

This Agreement may be amended only by a written document signed by Employees and an Executive Officer of the Company.

9.      Severability.

In the event that any of the provisions of this Agreement are found by a judicial or other tribunal to be unenforceable, the remaining provisions of this Agreement will remain enforceable.

10.     Nonadmission.

This Agreement is being entered into solely for the purpose of settling disputed claims, and shall not be construed as: (a) an admission by the Released Parties of any (i) liability or wrongdoing to Employees, (ii) breach of any agreement, or (iii) violation of a statute, law or regulation; or (b) a waiver of any defenses as to those matters within the scope of this Agreement. The Company specifically denies any liability or wrongdoing, and Employees agree that they will not state, suggest or imply the contrary to anyone, either directly or indirectly, whether through counsel or otherwise.

11.     Right to Counsel.

Employees acknowledge that they were informed that they have the right to consult with an attorney before signing this Agreement and that this paragraph shall constitute written notice of the right to be advised by legal counsel. Additionally, Employees acknowledge that they have been advised by competent legal counsel of their own choosing in connection with the review and execution of this Agreement and that they had an opportunity to and did negotiate over the terms of this Agreement.

12.     Choice of Law.

This Agreement shall be construed and enforced under the laws of the State of Illinois as to substance and procedure, including all questions of conflicts of laws.

4

13.    Employee Acknowledgment.

Employees declare that they have completely read this Agreement and acknowledge that it is written in a manner calculated to be understood by Employees. Employees fully understand its terms and contents, including the rights and obligations hereunder, and freely, voluntarily and without coercion enter into this Agreement. Further, Employees agree and acknowledge that they have had sufficient time and a full opportunity to investigate all matters pertaining to their claims and that the waiver and release of all rights or claims they may have under any local, state or federal law is knowing and voluntary.

14.    Counterparts.

This Agreement may be executed in one or more actual, facsimile or .pdf counterparts, all of which will be considered one and the same instrument and all of which will be considered duplicate originals.

**PLEASE READ CAREFULLY. THIS DOCUMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

Juanita Santiago                                        Smith Thomas Williams Healthcare, LLC

_____                        By: _____

Date: _____                          Date: _____

Tia Manson                                              Debbie Thomas Smith

_____                        _____

Date: 4/26/11                                          Date: _____

5